**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| REALTIME DATA LLC d/b/a IXO, | |
| Plaintiff, | Case No. 6:15-cv-470 |
| v. | JURY TRIAL DEMANDED |
| TERADATA CORPORATION and TERADATA OPERATIONS, INC. | |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.* in which Plaintiff Realtime Data LLC d/b/a IXO ("Plaintiff," "Realtime," or "IXO") makes the following allegations against Defendants Teradata Corporation and Teradata Operations, Inc. (collectively, "Teradata"):

## PARTIES

1.      Realtime is a New York limited liability company.  Realtime has places of business at 1828 E.S.E. Loop 323, Tyler, Texas 75701 and 116 Croton Lake Road, Katonah, New York 10536.  Since the 1990s, Realtime has researched and developed specific solutions for data compression, including, for example, those that increase the speeds at which data can be stored and accessed.  As recognition of its innovations rooted in this technological field, Realtime holds over 40 United States patents and has numerous pending patent applications.  Realtime has licensed patents in this portfolio to many of the world's leading technology companies.  The patents-in-suit relate to Realtime's development of advanced systems and methods for fast and efficient data compression using numerous innovative compression techniques based on, for example, particular attributes of the data.

2.      On information and belief, Defendant Teradata Corporation is a Delaware corporation with its principal office at 10000 Innovation Drive, Dayton, Ohio 45342.  On information and belief, Teradata Corporation can be served through its registered agent, C T Corporation System, 1300 E 9th St, Cleveland, Ohio 44114.  On information and belief, Defendant Teradata Corporation has conducted business, including infringing acts, in this District, either directly or through its wholly-owned subsidiary, Defendant Teradata Operations, Inc.

3.      On information and belief, Defendant Teradata Operations, Inc. is a Delaware corporation with its principal office at 10000 Innovation Drive, Dayton, Ohio 45342.  On information and belief, Teradata Operations, Inc. can be served through its registered agent, C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201. On information and belief, Defendant Teradata Operations, Inc. is a wholly-owned subsidiary of Defendant Teradata Corporation.

## JURISDICTION AND VENUE

4.      This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has personal jurisdiction over Defendants Teradata Corporation and Teradata Operations, Inc. in this action because both have committed acts within the Eastern District of Texas giving rise to this action and have established minimum contacts with this forum such that the exercise of jurisdiction over Teradata would not offend traditional notions of fair play and substantial justice.  Defendants, directly and through subsidiaries or intermediaries, have committed and continue to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the asserted patents.  Defendant Teradata Operations, Inc. is registered to do business in the State of Texas and has appointed C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201 as its agent for service of process.

6.     Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b).  Defendant Teradata Operations, Inc. is registered to do business in Texas, and upon information and belief, Teradata has transacted business in the Eastern District of Texas and has committed acts of direct and indirect infringement in the Eastern District of Texas.

**COUNT I**

**INFRINGEMENT OF U.S. PATENT NO. 7,378,992**

7.     Plaintiff realleges and incorporates by reference paragraphs 1-6 above, as if fully set forth herein.

8.     Plaintiff Realtime is the owner by assignment of United States Patent No. 7,378,992 ("the '992 patent") entitled "Content independent data compression method and system."  The '992 patent was duly and legally issued by the United States Patent and Trademark Office on May 27, 2008.  A true and correct copy of the '992 patent, including its reexamination certificates, is included as Exhibit A.

9.     On information and belief, Teradata has used, offered for sale, sold and/or imported into the United States Teradata products that infringe various claims of the '992 patent and continues to do so.  By way of illustrative example, these infringing products include, without limitation, Teradata's compression products and services, such as, *e.g.,* the Teradata Database product and all versions and variations thereof since the issuance of the '992 patent ("accused products").

10.     On information and belief, Teradata has directly infringed and continues to infringe the '992 patent, for example, through its own use and testing of the accused products to practice compression methods claimed by the '992 patent, including a computer implemented method comprising: receiving a data block; associating at least one encoder to each one of several data types; analyzing data within the data block to identify a first data type of the data within the data block; compressing if said first data

3

type is the same as one of said several data types, said data block with said at least one

encoder associated with said one of said several data types that is the same as said first

data type to provide a compressed data block; and compressing, if said first data type is

not the same as one of said several data types, said data block with a default encoder to

provide said compressed data block, wherein the analyzing of the data within the data

block to identify one or more data types excludes analyzing based only on a descriptor

that is indicative of the data type of the data within the data block.  On information and

belief, use of the accused products in their ordinary and customary fashion results in

infringement of the methods claimed by the '992 patent.

11.    On information and belief, Teradata has had knowledge of the '992 patent

since at least the filing of this Complaint or shortly thereafter, and on information and

belief, Teradata knew of the '992 patent and knew of its infringement, including by way

of this lawsuit.

12.    Teradata's affirmative acts of making, using, selling, offering for sale,

and/or importing the accused products have induced and continue to induce users of the

accused products to use the accused products in their normal and customary way to

infringe the '992 patent by practicing compression methods claimed by the '992 patent,

including a computer implemented method comprising: receiving a data block;

associating at least one encoder to each one of several data types; analyzing data within

the data block to identify a first data type of the data within the data block; compressing

if said first data type is the same as one of said several data types, said data block with

said at least one encoder associated with said one of said several data types that is the

same as said first data type to provide a compressed data block; and compressing, if said

first data type is not the same as one of said several data types, said data block with a

default encoder to provide said compressed data block, wherein the analyzing of the data

within the data block to identify one or more data types excludes analyzing based only on

a descriptor that is indicative of the data type of the data within the data block.  For

example, in a Teradata News Release, "Teradata Establishes New Standard for Columnar Databases - 9/29/2011," [1] Teradata explained that Teradata Database automatically chooses from among six types of compression so data can be compressed more efficiently.  Teradata specifically intended and was aware that the normal and customary use of the accused products would infringe the '992 patent.  Teradata performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '992 patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.  On information and belief, Teradata engaged in such inducement to promote the sales of the accused products, *e.g.,* through Teradata's user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '992 patent. Accordingly, Teradata has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '992 patent, knowing that such use constitutes infringement of the '992 patent.

13.     By making, using, offering for sale, selling and/or importing into the United States the accused products and touting the benefits of using the accused products' compression features, Teradata has injured Realtime and is liable to Realtime for infringement of the '992 patent pursuant to 35 U.S.C. § 271.

14.     As a result of Teradata's infringement of the '992 patent, Plaintiff Realtime is entitled to monetary damages in an amount adequate to compensate for Teradata's infringement, but in no event less than a reasonable royalty for the use made of the invention by Teradata, together with interest and costs as fixed by the Court.

---

[1] http://www.teradata.com/News-Releases/2011/Teradata-Establishes-New-Standard-for-Columnar-Databases/?LangType=1033&LangSelect=true#sthash.vhJ2lvyM.dpuf

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 7,415,530

15.     Plaintiff Realtime realleges and incorporates by reference paragraphs 1-14 above, as if fully set forth herein.

16.     Plaintiff Realtime is the owner by assignment of United States Patent No. 7,415,530 ("the '530 Patent") entitled "System and methods for accelerated data storage and retrieval." The '530 Patent was duly and legally issued by the United States Patent and Trademark Office on August 19, 2008.  A true and correct copy of the '530 Patent, including its reexamination certificate, is included as Exhibit B.

17.     On information and belief, Teradata has used, offered for sale, sold and/or imported into the United States Teradata products that infringe various claims of the '530 patent and continues to do so.  By way of illustrative example, these infringing products include, without limitation, Teradata's compression products and services, such as, *e.g.,* the Teradata Database product and all versions and variations thereof since the issuance of the '530 patent ("accused products").

18.     On information and belief, Teradata has directly infringed and continues to infringe the '530 patent, for example, through its own use, testing, sale, offer for sale, and/or importation of the accused products and computer systems running the accused products, which when used as designed and intended, constitute a system comprising: a memory device; and a data accelerator, wherein said data accelerator is coupled to said memory device, a data stream is received by said data accelerator in received form, said data stream includes a first data block and a second data block, said data stream is compressed by said data accelerator to provide a compressed data stream by compressing said first data block with a first compression technique and said second data block with a second compression technique, said first and second compression techniques are different, said compressed data stream is stored on said memory device, said compression and storage occurs faster than said data stream is able to be stored on said memory device in

said received form, a first data descriptor is stored on said memory device indicative of said first compression technique, and said first descriptor is utilized to decompress the portion of said compressed data stream associated with said first data block.  Such infringing systems include the accused products running on compatible systems.

19.     On information and belief, Teradata has had knowledge of the '530 patent since at least the filing of this Complaint or shortly thereafter, and on information and belief, Teradata knew of the '530 patent and knew of its infringement, including by way of this lawsuit.

20.     Teradata's affirmative acts of making, using, selling, offering for sale, and/or importing the accused products have induced and continue to induce users of the accused products to use the accused products in their normal and customary way on compatible systems to infringe the '530 patent, knowing that when the accused products are used in their ordinary and customary manner with such compatible systems, such systems are converted into infringing systems comprising: a memory device; and a data accelerator, wherein said data accelerator is coupled to said memory device, a data stream is received by said data accelerator in received form, said data stream includes a first data block and a second data block, said data stream is compressed by said data accelerator to provide a compressed data stream by compressing said first data block with a first compression technique and said second data block with a second compression technique, said first and second compression techniques are different, said compressed data stream is stored on said memory device, said compression and storage occurs faster than said data stream is able to be stored on said memory device in said received form, a first data descriptor is stored on said memory device indicative of said first compression technique, and said first descriptor is utilized to decompress the portion of said compressed data stream associated with said first data block, thereby infringing the '530 patent.  For

example, in an article in Teradata Magazine entitled "New Options for Compression",[2] Teradata explains that data compression has the benefit of reducing I/O to improve throughput by enabling the placement of more data in cache memory and minimizing data movement between storage and memory.  Additionally, in a Teradata News Release, "Teradata Establishes New Standard for Columnar Databases - 9/29/2011,"[3] Teradata explained that Teradata Database automatically chooses from among six types of compression so data can be compressed more efficiently.  Additionally, in its Release Summary for Teradata Database Release 14.0, Teradata explained that primary data, fallback data, and CLOB data can be independently compressed with block-level compression (BLC).[4]  Teradata specifically intended and was aware that the normal and customary use of Teradata Database on compatible systems would infringe the '530 patent.  Teradata performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '530 patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.  On information and belief, Teradata engaged in such inducement to promote the sales of the accused products, *e.g.,* through Teradata's user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '530 patent.  Accordingly, Teradata has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way with compatible systems to make and/or use systems infringing the '530 patent, knowing that such use of the accused products with compatible systems will result in infringement of the '530 patent.

---

[2] http://www.teradatamagazine.com/New-Options-for-Compression/
[3] http://www.teradata.com/News-Releases/2011/Teradata-Establishes-New-Standard-for-Columnar-Databases-/?LangType=1033&LangSelect=true#sthash.vhJ2lvyM.dpuf
[4]
http://www.info.teradata.com/HTMLPubs/DB_TTU_14_10/index.html#page/General_Reference/B035_1098_112A/Chap3.49.004.html

21.     Teradata also indirectly infringes the '530 patent by manufacturing, using, selling, offering for sale, and/or importing the accused products, with knowledge that the accused products were and are especially manufactured and/or especially adapted for use in infringing the '530 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.   On information and belief, the accused products are designed to function with compatible hardware to create systems comprising: a memory device; and a data accelerator, wherein said data accelerator is coupled to said memory device, a data stream is received by said data accelerator in received form, said data stream includes a first data block and a second data block, said data stream is compressed by said data accelerator to provide a compressed data stream by compressing said first data block with a first compression technique and said second data block with a second compression technique, said first and second compression techniques are different, said compressed data stream is stored on said memory device, said compression and storage occurs faster than said data stream is able to be stored on said memory device in said received form, a first data descriptor is stored on said memory device indicative of said first compression technique, and said first descriptor is utilized to decompress the portion of said compressed data stream associated with said first data block, thereby infringing the '530 patent.   Because all software must run on corresponding compatible hardware that necessarily includes a memory device, and the functions of the claimed data accelerator are performed by the accused products when executed on such hardware, the most compelling inference is that the accused products have no substantial non-infringing uses, and that any other uses would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.   Teradata's manufacture, use, sale, offering for sale, and/or importation of the accused products constitutes contributory infringement of the '530 patent.

22.     By making, using, offering for sale, selling and/or importing into the United States the accused products and computer systems running the accused products,

and touting the benefits of using the accused products' compression features, Teradata has injured Realtime and is liable to Realtime for infringement of the '530 patent pursuant to 35 U.S.C. § 271.

23.     As a result of Teradata's infringement of the '530 patent, Plaintiff Realtime is entitled to monetary damages in an amount adequate to compensate for Teradata's infringement, but in no event less than a reasonable royalty for the use made of the invention by Teradata, together with interest and costs as fixed by the Court.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 8,643,513

24.     Plaintiff realleges and incorporates by reference paragraphs 1-23 above, as if fully set forth herein.

25.     Plaintiff Realtime is the owner by assignment of United States Patent No. 8,643,513 ("the '513 patent") entitled "Data compression systems and methods."  The '513 patent was duly and legally issued by the United States Patent and Trademark Office on February 4, 2014.  A true and correct copy of the '513 patent is included as Exhibit C.

26.     On information and belief, Teradata has used, offered for sale, sold and/or imported into the United States Teradata products that infringe various claims of the '513 patent and continues to do so.  By way of illustrative example, these infringing products include, without limitation, Teradata's compression products and services, such as, *e.g.,* the Teradata Database product and all versions and variations thereof since the issuance of the '513 patent ("accused products").

27.     On information and belief, Teradata has directly infringed and continues to infringe the '513 patent, for example, through its own use and testing of the accused products to practice compression methods claimed by the '513 patent, including a method of compressing a plurality of data blocks, comprising: analyzing the plurality of data blocks to recognize when an appropriate content independent compression algorithm is to

be applied to the plurality of data blocks; applying the appropriate content independent data compression algorithm to a portion of the plurality of data blocks to provide a compressed data portion; analyzing a data block from another portion of the plurality of data blocks for recognition of any characteristic, attribute, or parameter that is indicative of an appropriate content dependent algorithm to apply to the data block; and applying the appropriate content dependent data compression algorithm to the data block to provide a compressed data block when the characteristic, attribute, or parameter is identified, wherein the analyzing the plurality of data blocks to recognize when the appropriate content independent compression algorithm is to be applied excludes analyzing based only on a descriptor indicative of the any characteristic, attribute, or parameter, and wherein the analyzing the data block to recognize the any characteristic, attribute, or parameter excludes analyzing based only on the descriptor.  On information and belief, use of the accused products in their ordinary and customary fashion results in infringement of the methods claimed by the '513 patent.

28.     On information and belief, Teradata has had knowledge of the '513 patent since at least the filing of this Complaint or shortly thereafter, and on information and belief, Teradata knew of the '513 patent and knew of its infringement, including by way of this lawsuit.

29.     Teradata's affirmative acts of making, using, selling, offering for sale, and/or importing the accused products have induced and continue to induce end-users of the accused products to use the accused products in their normal and customary way to infringe the '513 patent by practicing compression methods claimed by the '513 patent, including a method of compressing a plurality of data blocks, comprising: analyzing the plurality of data blocks to recognize when an appropriate content independent compression algorithm is to be applied to the plurality of data blocks; applying the appropriate content independent data compression algorithm to a portion of the plurality of data blocks to provide a compressed data portion; analyzing a data block from another

portion of the plurality of data blocks for recognition of any characteristic, attribute, or parameter that is indicative of an appropriate content dependent algorithm to apply to the data block; and applying the appropriate content dependent data compression algorithm to the data block to provide a compressed data block when the characteristic, attribute, or parameter is identified, wherein the analyzing the plurality of data blocks to recognize when the appropriate content independent compression algorithm is to be applied excludes analyzing based only on a descriptor indicative of the any characteristic, attribute, or parameter, and wherein the analyzing the data block to recognize the any characteristic, attribute, or parameter excludes analyzing based only on the descriptor. For example, in a Teradata News Release, "Teradata Establishes New Standard for Columnar Databases - 9/29/2011," [5] Teradata explained that Teradata Database automatically chooses from among six types of compression, including Algorithmic Compression (ALC), so data can be compressed more efficiently.  Additionally, in its Release Summary for Teradata Database Release 14.0, Teradata explained that primary data, fallback data, and CLOB data can be independently compressed with block-level compression (BLC).[6] Teradata specifically intended and was aware that the normal and customary use of the accused products would infringe the '513 patent.  Teradata performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '513 patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.  On information and belief, Teradata engaged in such inducement to promote the sales of the accused products, *e.g.,* through Teradata's user manuals, product support, marketing

---

[5] http://www.teradata.com/News-Releases/2011/Teradata-Establishes-New-Standard-for-Columnar-Databases/?LangType=1033&LangSelect=true#sthash.vhJ2lvyM.dpuf
[6]
http://www.info.teradata.com/HTMLPubs/DB_TTU_14_10/index.html#page/General_Reference/B035_1098_112A/Chap3.49.004.html

materials, and training materials to actively induce the users of the accused products to infringe the '513 patent.    Accordingly, Teradata has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '513 patent, knowing that such use constitutes infringement of the '513 patent.

30.     By making, using, offering for sale, selling and/or importing into the United States the accused products and touting the benefits of using the accused products' compression features, Teradata has injured Realtime and is liable to Realtime for infringement of the '513 patent pursuant to 35 U.S.C. § 271.

31.     As a result of Teradata's infringement of the '513 patent, Plaintiff Realtime is entitled to monetary damages in an amount adequate to compensate for Teradata's infringement, but in no event less than a reasonable royalty for the use made of the invention by Teradata, together with interest and costs as fixed by the Court.

<u>COUNT IV</u>

<u>INFRINGEMENT OF U.S. PATENT NO. 6,597,812</u>

32.     Plaintiff realleges and incorporates by reference paragraphs 1-31 above, as if fully set forth herein.

33.     Plaintiff Realtime is the owner by assignment of United States Patent No. 6,597,812 ("the '812 patent") entitled "System and method for lossless data compression and decompression."  The '812 patent was duly and legally issued by the United States Patent and Trademark Office on July 22, 2003.  A true and correct copy of the '812 patent is included as Exhibit D.

**Teradata Database**

34.     On information and belief, Teradata has used, offered for sale, sold and/or imported into the United States Teradata products that infringe various claims of the '812 patent and continues to do so.  By way of illustrative example, these infringing products include, without limitation, Teradata's compression products and services, such as, *e.g.,*

the Teradata Database product and all versions and variations thereof since the issuance of the '812 patent ("accused products").

35.    On information and belief, Teradata has directly infringed and continues to infringe the '812 patent, for example, through its own use and testing of the accused products to practice compression methods claimed by the '812 patent, including a method for compressing input data comprising a plurality of data blocks, the method comprising the steps of: detecting if the input data comprises a run-length sequence of data blocks; outputting an encoded run-length sequence, if a run-length sequence of data blocks is detected; maintaining a dictionary comprising a plurality of code words, wherein each code word in the dictionary is associated with a unique data block string; building a data block string from at least one data block in the input data that is not part of a run-length sequence; searching for a code word in the dictionary having a unique data block string associated therewith that matches the built data block string; and outputting the code word representing the built data block string.  On information and belief, use of the accused products in their ordinary and customary fashion results in infringement of the methods claimed by the '812 patent.

36.    On information and belief, Teradata has had knowledge of the '812 patent since at least the filing of this Complaint or shortly thereafter, and on information and belief, Teradata knew of the '812 patent and knew of its infringement, including by way of this lawsuit.

37.    Teradata's affirmative acts of making, using, selling, offering for sale, and/or importing the accused products have induced and continue to induce users of the accused products to use the accused products in their normal and customary way to infringe the '812 patent by practicing compression methods claimed by the '812 patent, including a method for compressing input data comprising a plurality of data blocks, the method comprising the steps of: detecting if the input data comprises a run-length sequence of data blocks; outputting an encoded run-length sequence, if a run-length

14

sequence of data blocks is detected; maintaining a dictionary comprising a plurality of code words, wherein each code word in the dictionary is associated with a unique data block string; building a data block string from at least one data block in the input data that is not part of a run-length sequence; searching for a code word in the dictionary having a unique data block string associated therewith that matches the built data block string; and outputting the code word representing the built data block string.  For example, Teradata's article in Teradata Magazine entitled "Pillar of Performance"[7] explained that Teradata Database will automatically choose among six types of compression including dictionary compression, dynamically adjusting the compression mechanisms for optimal storage as the data evolves over time, thereby preventing dictionary compression values from becoming stale over time.  Teradata specifically intended and was aware that the normal and customary use of the accused products would infringe the '812 patent. Teradata performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '812 patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement. On information and belief, Teradata engaged in such inducement to promote the sales of the accused products, *e.g.,* through Teradata's user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '812 patent.  Accordingly, Teradata has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '812 patent, knowing that such use constitutes infringement of the '812 patent.

38.    By making, using, offering for sale, selling and/or importing into the United States the accused products and touting the benefits of using the accused products' intelligent compression features, Teradata has injured Realtime and is liable to

---

[7] http://www.teradatamagazine.com/v11n04/Tech2Tech/Pillar-of-Performance/

Realtime for infringement of the '812 patent pursuant to 35 U.S.C. § 271.

39.     As a result of Teradata's infringement of the '812 patent, Plaintiff Realtime is entitled to monetary damages in an amount adequate to compensate for Teradata's infringement, but in no event less than a reasonable royalty for the use made of the invention by Teradata, together with interest and costs as fixed by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Realtime respectfully requests that this Court enter:

a.     A judgment in favor of Plaintiff that Teradata has infringed, either literally and/or under the doctrine of equivalents, the '992 patent, the '530 patent, the '513 patent, and the '812 patent;

b.     A permanent injunction prohibiting Teradata from further acts of infringement of the '992 patent, the '530 patent, the '513 patent, and the '812 patent;

c.     A judgment and order requiring Teradata to pay Plaintiff its damages, costs, expenses, and prejudgment and post-judgment interest for Teradata's infringement of the '992 patent, the '530 patent, the '513 patent, and the '812 patent, as provided under 35 U.S.C. § 284;

d.     A judgment and order requiring Teradata to provide an accounting and to pay supplemental damages to Realtime, including without limitation, prejudgment and post-judgment interest;

e.     A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Defendants; and

f.     Any and all other relief as the Court may deem appropriate and just under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated:  May 8, 2015                    Respectfully submitted,


*/s/ Marc A. Fenster by permission Claire*
*Abernathy Henry*
Marc A. Fenster (CA SBN 181067)
LEAD ATTORNEY
Reza Mirzaie (CA SBN 246953)
Brian D. Ledahl (CA SBN 186579)
Jeffrey Z.Y. Liao (CA SBN 288994)
C. Jay Chung (CA SBN 252794)
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
(310) 826-7474
mfenster@raklaw.com
rmirzaie@raklaw.com
bledahl@raklaw.com
jliao@raklaw.com
jchung@raklaw.com

T. John Ward, Jr.
Texas State Bar No. 00794818
E-mail: jw@wsfirm.com
Claire Abernathy Henry
Texas State Bar No. 24053063
E-mail: claire@wsfirm.com
**WARD, SMITH & HILL, PLLC**
1127 Judson Road, Ste 220
Longview, Texas 75601
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

***Attorneys for Plaintiff***
***Realtime Data LLC d/b/a IXO***