**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| REALTIME DATA LLC d/b/a IXO, | |
| Plaintiff, | Case No. 6:15-cv-00470-RWS-JDL |
| v. | |
| TERADATA OPERATIONS, INC., | |
| Defendant. | |

**PLAINTIFF REALTIME DATA LLC'S OPPOSITION TO DEFENDANT TERADATA OPERATIONS, INC.'S MOTION TO TRANSFER VENUE**

## Table of Contents

Page

I.   INTRODUCTION ......................................................................................................1

II.  BACKGROUND ......................................................................................................2

    A.   Realtime Has Been Actively Present in this District Since 2009. ..............................3

    B.   The Court Is Already Familiar with Patents-in-Suit. .................................................3

III. LEGAL STANDARD ................................................................................................4

IV.  TERADATA CANNOT SATISFY ITS BURDEN TO TRANSFER THIS
    ACTION TO THE CENTRAL DISTRICT OF CALIFORNIA ...................................5

    A.   The Private Interest Factors Weigh Against Transfer. ...............................................5

        1.   The Sources of Proof are Not "Much More Accessible" in C.D. Cal. .............5

        2.   Despite Teradata's Identification of Duplicative "Potential" Witnesses
           from Southern California, C.D. Cal. is Not More Convenient for
           Most of the Likely Witnesses. ....................................................................7

        3.   C.D. Cal. Does Not Have "More Subpoena Power".....................................10

        4.   The "Practical Problems" Here Strongly Weigh Against Transfer. ..............11

    B.   The Public Interest Factors Also Weigh Against Transfer. ......................................14

        1.   C.D. Cal. Does Not Have Greater Interest in this Case. ...............................14

        2.   The Other Public Interests Factors are Neutral............................................15

V.   TERADATA ALSO CANNOT SATISFY ITS BURDEN TO TRANSFER THIS
    ACTION TO THE NORTHERN DISTRICT OF CALIFORNIA ........................15

VI.  CONCLUSION .......................................................................................................15

## Table of Authorities

Page

**Cases**

*Adaptix, Inc. v. Verizon Wireless*
    No. 6:15-cv-00045 (E.D. Tex. Aug. 12, 2015) ................................................... 10

*Adrain v. Genetec Inc.*
    2009 U.S. Dist. LEXIS 86855 (E.D. Tex. Sept. 22, 2009) ............................... 13

*Eolas Techs., Inc. v. Adobe Sys., Inc.*
    2010 U.S. Dist. LEXIS 104125 (E.D. Tex. Sept. 28, 2010) ............................ 11

*Geotag, Inc. v. OnTargetJobs, Inc.*
    No. 2:13-cv-0064-JRG (E.D. Tex. Mar. 7, 2014) ............................. 7, 8, 10, 14

*GeoTag, Inc. v. Starbucks Corp.*
    2013 WL 890484 (E.D. Tex. Jan. 14, 2013) ...................................................... 14

*In re EMC Corp.*
    501 F. App'x 973 (Fed. Cir. 2013) .................................................................... 13

*In re Genentech, Inc.*
    566 F.3d 1338 (Fed. Cir. 2009) .......................................................................... 6

*In re Google Inc.*
    412 Fed. Appx. 295 (Fed. Cir. 2011) ................................................................ 12

*In re Hoffmann-La Roche Inc.*
    587 F.3d 1333 (Fed. Cir. 2009) ........................................................................ 14

*In re Morgan Stanley*
    417 F. App'x 947 (Fed. Cir. 2011) ................................................................... 13

*In re TS Tech United States Corp.*
    551 F.3d 1315 (Fed. Cir. 2008) ..................................................................... 9, 14

*In re Vistaprint Ltd.*
    628 F.3d 1342 (Fed. Cir. 2010) ..................................................................... 1, 12

*In re Volkswagen AG*
    371 F.3d 201 (5th Cir. 2004) .............................................................................. 4

*In re Volkswagen of Am., Inc.*
    545 F.3d 304 (5th Cir. 2008) .............................................................................. 4

*In re Volkswagen of Am., Inc.,*
    566 F.3d at 1349 (Fed. Cir. 2009) ................................................................. 5, 12

*In re Zimmer Holdings, Inc.*
    609 F.3d 1378 (Fed. Cir. 2010) ........................................................................ 13

*Ingeniador, LLC v. Adobe Sys.,*
    No. 2:12-cv-00805-JRG, 2014 U.S. Dist. LEXIS 3308 ................................... 14

## Table of Authorities
### Cont'd

**Page**

*Invensense, Inc. v. STMicroelectronics, Inc.*
   2014 WL 105627 (E.D. Tex. Jan. 10, 2014) .................................................................. 10

*Mondis Tech. Ltd. v. Top Victory Elecs. (Taiwan) Co.*
   2009 U.S. Dist. LEXIS 103394 (E.D. Tex. Oct. 23, 2009) ........................................... 13

*Nexus Display Techs., v. Lenovo, Inc.*
   No. 2:14-cv-763 (E.D. Tex. Aug. 25, 2015) .................................................................. 11

*Plant Equip. Inc. v. Intrado Inc.*
   2010 U.S. Dist. LEXIS 59517 (E.D. Tex. June 15, 2010) .............................................. 7

*Rockstar Consortium US LP v. Google Inc.*
   2014 WL 4748692 (E.D. Tex. Sept. 23, 2014) ...................................................... 10, 11

*Tex. Data Co., L.L.C. v. Target Brands, Inc.*
   771 F. Supp. 2d 630 (E.D. Tex. 2011) ........................................................................... 4

*Vertical Computer Sys., Inc. v. LG Electronics MobileComm U.S.A., Inc.*
   2013 WL 2241947 (E.D. Tex. May 21, 2013) ................................................................ 6

*Virtualagility, Inc. v. Salesforce.com, Inc.*
   2014 U.S. Dist. LEXIS 12015 (E.D. Tex. Jan. 31, 2014) .............................................. 11

## I.      INTRODUCTION

Defendant Teradata Operations, Inc. ("Teradata") cannot meet its "significant burden" to show that the Central District of California ("C.D. Cal.") is "clearly more convenient" than this District.  Each of the relevant private and public interest factors either strongly weighs against transfer, or is, at best, neutral.  For instance, Teradata has failed to demonstrate that it would be inconvenienced by having to produce documents in this District – its source code will be inspected in California if this case stays in Texas, and Teradata has not identified any documents or other evidence that cannot be produced electronically.  Nor has Teradata identified any third party witnesses with relevant, material knowledge whose testimony will be necessary for trial.  Teradata simply cherry-picked one employee of a Teradata hardware supplier who happens to live near C.D. Cal., but conveniently omitted all other potential third party suppliers.  And while Teradata identified ten party witnesses, many of these witnesses appear to have duplicative knowledge, and it is highly unlikely that all ten witnesses will be required for trial.  In any event, any inconvenience to these witnesses is offset by the significant inconvenience to Realtime's witnesses that would occur if this case were transferred to C.D. Cal. – a fact that Teradata wholly ignores.

The final private interest factor, which is a "paramount consideration" in the transfer analysis, strongly disfavors transfer.  This Court has substantial experience with two of the patents-in-suit (the '992 and '530 patents) from prior cases – one was settled on the morning of trial just last year.  This Court's familiarity with the patents-in-suit, coupled with the fact that there are seven other co-pending cases before the Court involving the same patents that have been consolidated for pre-trial, "provides a substantial justification for maintaining suit in the Eastern District of Texas." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010).  Notably, eleven of the consolidated defendants have *not* sought transfer and will thus remain in this District as the deadline for filing transfer motions has passed.  Transferring this case to a court unfamiliar with the patents-in-suit would not only consume unnecessary judicial resources, but

1

would also create a significant risk of inconsistent rulings.  Simply put, this Court is best suited to preside over this case and the related cases.

As to the public interest factors, Teradata has not and cannot demonstrate that C.D. Cal. has any more of an interest in adjudicating this case than this District given that the accused products are web-based products used by customers nationwide, including customers within this District.  The mere fact that Teradata is headquartered in C.D. Cal. does not warrant transfer. Additionally, Teradata's efforts to mischaracterize Realtime's presence in this District as an artifact of litigation are unsubstantiated.  Realtime has maintained an office in Tyler for ***over six years***, where it conducts business related to the development and licensing of its patent portfolio, and where it stores relevant documents and physical prototypes.  Indeed, Realtime recently opened another office in Plano and hired an electrical engineer to assist with these efforts.  And Teradata admits that the remaining public interest factors are neutral.

For the same reasons this Court should deny Teradata's request to transfer this case to C.D. Cal., there are stronger reasons to deny Teradata's "alternative" request to transfer to the Northern District of California ("N.D. Cal.").  In fact, Teradata could not identify a single relevant witness or document in that District.

In sum, Teradata has failed to demonstrate that a single factor favors transfer, let alone that C.D. Cal. or N.D. Cal. is clearly more convenient.  Accordingly, Teradata's motion should be denied in its entirety.

## II.    BACKGROUND

Teradata and each of the other defendants in the eight consolidated cases are accused of infringing at U.S. Patent Nos. 7,378,992, 7,415,530, 8,643,513, and 9,116,908[1] (the "patents-in-suit").  Lead Case No. 6:15-cv-00463-RWS-JDL, Dkt. No. 16.  The inventions claimed in the patents-in-suit relate to novel systems and methods for efficient digital data compression using numerous innovative techniques based on, for example, particular attributes of the data.

---

[1]  Teradata and four other defendants are also accused of infringing U.S. Patent No. 6,597,812.

### A.     Realtime Has Been Actively Present in this District Since 2009

While Realtime is a New York company, Realtime and its intellectual property portfolio have a long history and presence in this District.  In October 2009, Realtime opened an office in Tyler to promote its licensing efforts relating to its digital-data compression patent portfolio. Declaration of Stephen McErlain ("McErlain Decl.") at ¶ 4.  Realtime opened its Tyler office in part to further its licensing efforts and to stage many of its physical prototypes and documents relating to its anticipated trial in the *Packeteer* action (Case No. 6:08-cv-00144), which involved the '992 patent. *Id*.

Since October 2009, Realtime has maintained a significant presence in this District. Shortly after opening the office, substantially all of Realtime's documents were either physically located at Realtime's Tyler office or exist electronically and will be collected from Realtime's Tyler office.  *Id*. at ¶ 5.  These include Realtime's patent file histories, licenses, and other documents relating to the patents-in-suit.  *Id*.  Realtime's Tyler office also includes physical devices and prototypes developed by Realtime, which are available for inspection at the Tyler office.  *Id*.  The devices include original X3 PCI accelerator cards, X3 Network Attached Storage Servers, X3 Web Servers, X3 Compaqtor, X3 Snap Servers, Realtime WAN Accelerators, Realtime T1 point-to-point bandwidth multipliers, and Realtime Market Data Accelerators, including data feed simulators, monitors and compression engines.  *Id*.  The Tyler office also houses original source code and demonstration software.  *Id*.  Moreover, over the past six years, Realtime has conducted numerous meetings and communications with and between various members of its Board of Directors in its Tyler office.  *Id*. at ¶ 6.  This year, Realtime opened yet another office in this District, this time in Plano.  *Id*. at ¶ 7.  Realtime plans to expand its patent licensing and development activities through the Plano office and recently hired an electrical engineer in furtherance of these plans.  *Id*.

### B.     The Court Is Already Familiar with Patents-in-Suit

Realtime's increased presence in this District has coincided with this Court's increase in familiarity with the patents-in-suit.  For example, since the *Packeteer* action, which involved

the '992 patent, Realtime also brought the *MetroPCS* action (Case No. 6:10-cv-00493-LED-JDL), which also involved patents that are asserted here, including the '530 patent, as well as numerous other patents that are related to the '992, '513, and '908 patents.  In addition to ruling on claim construction and summary judgment motions, this Court and the parties involved in that case filed over 850 other orders, motions, and other pleadings.  And like *Packeteer*, *MetroPCS* involved numerous claim construction hearings and rulings involving many terms used in the patents-in-suit.  Case No. 6:10-cv-00493-LED-JDL, Dkt. Nos. 287, 328, 438.  In total, this Court and the parties involved in that case filed over 680 orders, motions, and other pleadings.  This case settled on the morning of trial last year in March 2014.

## III.   LEGAL STANDARD

To prevail on a motion brought under 1404(a), Teradata bears "a significant burden … to show good cause" to support its motion to transfer.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008) ("*Volkswagen II*"); *see also Tex. Data Co., L.L.C. v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 638-39 (E.D. Tex. 2011) ("the Court … recognizes the significance of the burden and does not take it lightly").  To satisfy this significant burden, Teradata must demonstrate that C.D. Cal. is a "clearly" more convenient forum than this District.  *Volkswagen II*, 545 F.3d at 315.

When deciding whether another forum is clearly more convenient, courts balance the private interests of the parties and the public interests in the fair and efficient administration of justice.[2]  The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the testimony of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  The public interest factors are: (1) the administrative difficulties flowing from

---

[2]   The threshold inquiry when analyzing a case's eligibility for transfer is whether the suit could have been brought in the proposed transferee district.  *Volkswagen II*, 545 F.3d at 312.  Realtime does not dispute that this case could have been brought in C.D. Cal.

court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.* Though no single factor is dispositive, the creation of parallel lawsuits in different jurisdictions is a "paramount consideration" weighing against transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*Volkswagen III*").

Here, Teradata cannot satisfy its burden of demonstrating that the private or public interest factors weigh in favor of transferring this case out of this District.

## IV. TERADATA CANNOT SATISFY ITS BURDEN TO TRANSFER THIS ACTION TO THE CENTRAL DISTRICT OF CALIFORNIA

### A. The Private Interest Factors Weigh Against Transfer

Each of the private interest factors is either neutral or strongly disfavors transfer. Teradata has failed to demonstrate that it would be inconvenienced by having to produce documents in this District, and, on balance, this District would be equally if not more convenient for the identified party and third party witnesses. On the other hand, judicial economy interests heavily weigh against transfer in light of this Court's familiarity with the patents-in-suit and the seven other pending consolidated cases involving the same patents.

#### 1. The Sources of Proof are Not "Much More Accessible" in C.D. Cal.

Right off the bat, Teradata's arguments develop from a faulty premise. Specifically, Teradata contends that "***none of the relevant evidence*** is located in this District" and that Realtime's connections to this District are "nonexistent." Mot. at 7 (emphasis added). This contention is demonstrably false. Contrary to Teradata's false assertions, there is plenty of evidence located in this District. Realtime's Tyler office houses the patent file histories, licenses, and other documents relating to the patents-in-suit. McErlain Decl. at ¶ 5. The Tyler office also includes physical devices and prototypes developed by Realtime, original source code, and demonstration software, all of which are available for inspection. *Id.*

In a flawed attempt to have this Court ignore these salient facts, Teradata argues that Realtime's connections to this District are the "classic" case of being "recent, ephemeral, and an artifact of litigation." Mot. at 14. This is also false. The only "evidence" proffered by Teradata in support of its false contention are excerpts from a brief filed by Realtime in February 2009 – over *six years ago*, and before Realtime opened its Tyler office in October 2009. Realtime opened its Tyler office in order to, *inter alia*, further promote its licensing efforts, and has conducted business in and housed its relevant documents and physical products in Tyler ever since. McErlain Decl. at ¶¶ 4-6. Because "[m]otions to transfer venue are to be decided based on the situation which existed when suit was instituted, the location of Realtime's evidence six years ago is irrelevant. *See Vertical Computer Sys., Inc. v. LG Electronics MobileComm U.S.A., Inc.*, No. 2:10-cv-490-JRG, 2013 WL 2241947, at *3 (E.D. Tex. May 21, 2013) (finding that the fact that certain relevant evidence changed locations irrelevant; "[m]otions to transfer venue are not decided on a series of changing facts, but instead should be evaluated based on the situation which existed when suit was filed"). At the time *this* suit was filed, the bulk of Realtime's relevant evidence had long been—and still is—located in Tyler. McErlain Decl. at ¶ 5.

Teradata overstates the facts regarding its own documents as well. Specifically, Teradata argues that "nearly all of the relevant evidence in this case is located within 100 miles of CDCAL." Mot. at 7. However, much of Teradata's evidence appears to be based outside C.D. Cal. For example, Teradata admits that an unspecified portion of its Database source code is located in Hyderabad, India. Mot. at 7. On the financial side, Teradata admits that many relevant documents are located in Munich, Germany. Teradata does not—and cannot—seriously contend that it would be more inconvenient to provide these foreign-stored documents in C.D. Cal. instead of this District.

The mere fact that some of Teradata's relevant documents may be located in Los Angeles and San Diego (which is not even in C.D. Cal.) does not warrant transfer, as Teradata contends. Mot. at 7-8. Teradata must show that, absent transfer, production would impose a "significant and unnecessary burden." *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009); *see also*

6

*Plant Equip. Inc. v. Intrado Inc.*, Case No. 2:09-cv-395-TJW, 2010 U.S. Dist. LEXIS 59517, at *8 (E.D. Tex. June 15, 2010) (failure to show that transporting evidence would pose a "significant additional inconvenience" weighs against transfer).   Teradata has failed to do so. For example, Teradata does not contend that its documents are incapable of being produced electronically, presumably because they can be produced electronically, which would minimize if not completely eliminate any purported inconvenience to Teradata.   Because "the bulk of evidence in patent suits is today produced by electronic means and is easily produced to remote locations, the Court [should] not overweigh the significance of this factor." *Geotag, Inc. v. OnTargetJobs, Inc.*, No. 2:13-cv-0064-JRG, slip op. at 3 (E.D. Tex. Mar. 7, 2014) (attached as Ex. A[3]).   And the location of Teradata's domestic source code also does not favor transfer. Teradata will not be transporting its servers to the litigation forum, but rather will require Realtime to inspect the source code on location at Teradata's offices.   Therefore, the burden to Teradata of producing its source code (and the burden to Realtime of inspecting said source code) will be the ***exactly the same*** if this Court were to transfer this case to C.D. Cal.   In any event, the minimal inconvenience to Teradata from having to produce its other documents in this District is offset by the fact that Realtime's documents and physical evidence are located in this District.

Accordingly, the first factor is neutral.

### 2.   Despite Teradata's Identification of Duplicative "Potential" Witnesses in Southern California, C.D. Cal. is Not More Convenient for Most of the Likely Witnesses

Teradata's faulty arguments continue in its analysis of factor two.   In particular, to give the appearance of greater overall inconvenience to its witnesses, Teradata picks ten Southern California employees, but ignores other potential witnesses located far outside California. Teradata's analysis and argument fail for several reasons.

---

[3] The exhibits cited herein ("Ex. __") refer to exhibits attached to the declaration of Reza Mirzaie ("Mirzaie Decl.").

First, Teradata's superficially high number of witnesses "likely to have material information" is inflated.  Though Teradata identified ten party witnesses that live in Los Angeles or San Diego, many of these witnesses have similar job duties and overlapping knowledge.  Mot at 9.  It is thus unlikely that all ten witnesses will be required to testify at trial (even assuming it was possible to present ten witnesses at trial).  *See Geotag* (Ex. A), slip op. at 4 (identification of witnesses "unlikely to be required at trial" does not support transfer).  For example, eight of the ten witnesses are all listed as knowledgeable regarding the technical aspects of the accused Database product.  Mot. at 9.   And the remaining two Southern California witnesses are marketing employees who are described as having the same knowledge.  Dkt. No. 25-1 at ¶ 24 ("Messrs. Birouty and Greenspan are the Teradata employees who would be most knowledgeable about the marketing of the accused Teradata Database product, including data compression features of the Teradata Database.").  Presumably, Teradata would not parade so many witnesses at trial to present wholly duplicative live testimony.  For the same reasons, it should not be able to rely on all of these duplicative witnesses for the purposes of transferring this case.

Second, Teradata's list of witnesses focuses on technical aspects of Teradata's accused products and ignores other aspects of this case, such as customer support and financial information.  Indeed, Teradata admits that four other potential trial witnesses are not even in California, but in India, Germany, and other places.   Mot. at 6-7.   Moreover, Teradata's arguments ignore that its headquarters are in Dayton, Ohio, over 1,000 miles closer to this District than to C.D. Cal.  Among other potentially relevant witnesses in Dayton are its Chief Information Officer, Chief Operating Officer, and a technical Professional Services Consultant, whose job duties include helping Teradata's customers with "performance enhancement through … compression."  Exs. D-F.  For any such witnesses, Teradata concedes "there is no significant difference in the convenience factor."  Mot. at 6-7.  Moreover, Teradata has dozens if not hundreds of employees who reside in Texas, including at least one with knowledge of the compression encoders and techniques used in its products. *See, e.g.*, Ex. F.

8

Third, Teradata gives little to no weight to Realtime's witnesses, who would be significantly inconvenienced if required to travel to C.D. Cal.  James Fallon and Steven Bo, inventors of the patents-in-suit, are residents of New York.  Fallon Decl. at ¶ 3; Bo Decl. at ¶ 3 They possess material knowledge regarding, *inter alia*, conception and reduction to practice of the inventions disclosed in the patents-in-suit, the design and development of the patents-in-suit, commercialization efforts relating to the patents-in-suit, ownership and assignment of the patents-in-suit, as well as the prosecution of the patents-in-suit.  Jerry Padian and Steve McErlain also reside in New York and have material knowledge regarding, *inter alia*, Realtime's claims and defendants' defenses and counterclaims, ownership of the patents-in-suit, prior litigation concerning the patents-in-suit and related patents, licensing of and other attempts to commercialize the patents-in-suit, Realtime's patent licensing policies, and Realtime's financial information relevant to damages issues.  Padian Decl. at ¶ 3; McErlain Decl. at ¶ 2.   The distance from New York to Los Angeles is nearly twice the distance between New York and Tyler.  Mirzaie Decl. at ¶ 5.  Additionally, each of these witnesses would still need to travel to this District for the other consolidated cases, *on top of* having to travel almost 2,500 miles to C.D. Cal. in the event this case is transferred.  Transfer would thus result in Realtime's witnesses having to travel a combined total of over 15,000 miles in the event this case is transferred, whereas Teradata's identified witnesses would have to travel a total of about 12,900 miles if case remains in this District.  *See* Mirzaie Decl. at ¶ 5.  Therefore, on balance, Teradata cannot meet its burden of showing that C.D. Cal. is clearly more convenient.  *See In re TS Tech United States Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (under the Fifth Circuit's "100-mile" rule, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled").

Fourth, Teradata's argument regarding the convenience of a single third party with supposedly material testimony is flawed on its face.  Teradata specifically identifies only one witness Douglas L. Whiting, who lives in Carlsbad, California and ***used to*** work for Hifn Corporation, a supplier of certain hardware used within the accused product.  Mot. at 4, 10.

9

Teradata's cherry-picking aside, Teradata fails to mention that Hifn is not even located in C.D. Cal. or that it has a large number of employees in Colorado and New Jersey.  Teradata also asserts that this witness "may also be called upon" to testify about prior art, including U.S. Patent No. 5,126,739.  *Id.* at 11 n.3.  Such speculative assertions are insufficient and should be given little weight, especially given that Teradata conveniently has not identified any other third party suppliers of hardware associated with the accused products or potential prior art witnesses located outside of California.  *See Rockstar Consortium US LP v. Google Inc.*, No. 2:13-CV-893-JRG-RSP, 2014 WL 4748692, at *4-5 (E.D. Tex. Sept. 23, 2014) (movant failed to meet its burden where it "selectively identified possible prior art witnesses in the Northern District of California and omitted possible witnesses in other states").  Moreover, Teradata has failed to show that Mr. Whiting's testimony would be necessary for trial.  As this Court has previously noted, "inventors of prior art rarely, if ever, actually testify at trial."  *Adaptix, Inc. v. Verizon Wireless*, No. 6:15-cv-00045-RWS-JDL, slip op. at 8 (E.D. Tex. Aug. 12, 2015) (attached as Ex. B).  Accordingly, this Court has rejected arguments just like Teradata's argument here because, "without even indicating on a good faith basis that a party intends to call a prior art witness to trial, it allows litigants to cherry-pick third parties who happen to have an invention in the relevant art and are located in the litigant's preferred district in order to sway the convenience analysis." *Id*.

Based on the foregoing, this factor is neutral.

### 3.     C.D. Cal. Does Not Have "More Subpoena Power"

Because parties are presumed to be able to produce their own employee witnesses, the focus of this factor is on third-party witnesses.  *Invensense, Inc. v. STMicroelectronics, Inc.*, No. 2:13-cv-00405-JRG, 2014 WL 105627, at *6 (E.D. Tex. Jan. 10, 2014); *OnTargetJobs* (Ex. A), slip op. at 3-4 (explaining that, in light of the December 2013 amendments to Rule 45, ["[the compulsory process] prong of a transfer inquiry now properly focuses on the presence or absence of potential third-party witnesses within the transferor and transferee venues' respective states").  Indeed, Teradata admits that it is "unlikely that compulsory process will be required for

Teradata's employees."  Mot. at 11.  Therefore, these witnesses should not be given weight under this factor.[4]

As to third parties, again, Teradata has specifically identified only one witness located in Carlsbad, California, who **may** have knowledge regarding the functionality of certain hardware used within the accused product.  Mot. at 4, 10.  Such speculative assertions are insufficient and should be given little weight. *See Rockstar Consortium*, 2014 WL 4748692, at *4-5.  Regardless, as this Court has held, both "the E.D. Tex. and the C.D. Cal. [] may instruct these witnesses to attend and subject them to being deposed [and the] Fifth Circuit observed that a videotape deposition would serve as an acceptable substitute for live testimony."  *Nexus Display Techs., v. Lenovo, Inc.*, No. 2:14-cv-763, slip op. at 7 (E.D. Tex. Aug. 25, 2015) (attached as Ex. C) (citations omitted).  And because "[Teradata] will know beforehand that their depositions will be used at trial, any inconvenience of not having the witnesses appear live is even reduced further."  *Virtualagility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011-JRG, 2014 U.S. Dist. LEXIS 12015, at *17-19 (E.D. Tex. Jan. 31, 2014).  Teradata's briefing fails to even recognize the possibility of presenting the witness's testimony by videotaped deposition, let alone explain why it would be inconvenienced by doing so.  Accordingly, this factor is neutral.

### 4.    The "Practical Problems" Here Strongly Weigh Against Transfer

"Practical problems include those that are rationally based on judicial economy."  *Eolas Techs., Inc. v. Adobe Sys., Inc.*, Case No. 6:09-CV-446, 2010 U.S. Dist. LEXIS 104125, at *27 (E.D. Tex. Sept. 28, 2010).  For example, the existence of other suits involving the same or similar issues may create practical difficulties that "will weigh heavily in favor or against transfer."  *Id.*  Indeed, the "existence of multiple lawsuits involving the same issues is a

---

[4] Teradata's contention that its party witnesses may nonetheless require compulsory process in the event they "retire or leave Teradata before providing testimony" (Mot. at 12) is completely unfounded and should be rejected.  Realtime could just as easily engage in a game of hypotheticals to support its position.  For example, in the event any of Teradata's witnesses transfer to Teradata's Texas offices, or relocate to Texas for any other reason, they would then be subject to the absolute subpoena power of this Court and not C.D. Cal.

paramount consideration when determining whether a transfer is in the interest of justice." *Volkswagen III*, 566 F.3d at 1351; *see also In re Google Inc.*, 412 Fed. Appx. 295, 296 (Fed. Cir. 2011) ("having one trial court decide all the[] claims clearly furthers" the "orderly, effective administration of justice").  For example, in *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010), the Federal Circuit held that the district court's experience with the patent-in-suit from prior litigation, coupled with the fact that there were other co-pending cases before the court involving the same patent, provided a "substantial justification for maintaining suit in the Eastern District of Texas."  *See also Nexus Display* (Ex. C), slip op. at 9 (existence of related action pending before the Court "strongly disfavors transfer").

As in *Vistaprint*, this Court has substantial experience with at least two of the patents-in-suit from prior litigation.  In the *Packeteer* and *MetroPCS* actions, which involved the '992 and '530 patents, respectively, the Court held hearings and issued orders on several substantive issues and motions, including claim construction and summary judgment.  Mirzaie Decl. at ¶¶ 2-3.   The cases settled just before trial after the parties submitted their proposed jury instructions and trial exhibit lists, and in fact *MetroPCS* was resolved just last year.  The mere fact that this case involves two additional patents (which are in the same patent family as the '992 and '530 patents) and different defendants does not negate the significant judicial economy benefits of this Court's familiarity with not only the '992 and '530 patents themselves, but also Realtime's claims, the prior art, claim construction, and damages issues.  And the Court has also gained at least some additional familiarity with the patents as several defendants in the consolidated cases filed motions to dismiss under 35 U.S.C. § 101, which are nearly fully briefed.  *See* Dkt. Nos. 23, 26, 31, 38, 44.

Additionally, the eight active related cases, all of which have been consolidated for pre-trial purposes, undeniably involve substantial overlap in issues of fact and law, including the validity of the overlapping patent claims and claim construction, to name a few.  Indeed, this Court specifically found that because the cases "involve a common question of law or fact, consolidation of the cases would promote efficient case management."   Dkt. No. 23.  And

12

significantly, the agreed-upon deadline to file motions to transfer has passed and eleven of the fourteen defendants have not even moved to transfer and will thus remain in this District.

Far from promoting the interest of justice, transferring this case "will only consume unnecessary additional judicial resources" by requiring another court to address overlapping issues, and would create a risk of inconsistent rulings. *Mondis Tech. Ltd. v. Top Victory Elecs. (Taiwan) Co.*, No. 2:08-CV-478 (TJW), 2009 U.S. Dist. LEXIS 103394, at *14 (E.D. Tex. Oct. 23, 2009); *see also Adrain v. Genetec Inc.*, No. 2:08-cv-423, 2009 U.S. Dist. LEXIS 86855, at *9-10 (E.D. Tex. Sept. 22, 2009) ("[T]he division of the case into multiple suits may be more convenient for [the defendant], but it would impose a significant burden on the plaintiff, witnesses, and the federal court system.  In addition to the burden on the courts, the existence of multiple lawsuits interpreting the same patent creates an unnecessary risk of inconsistent claim construction and adjudication.").

The cases cited by Teradata in an attempt to undermine the significance of this factor (Mot. at 12-13) do not help Teradata's motion.  For example, Teradata relies on *In re EMC Corp.*, 501 F. App'x 973 (Fed. Cir. 2013), but the Federal Circuit in that case ***denied*** mandamus of a district court's decision to deny motions to transfer.  Significantly, the Federal Circuit's decision was based in part on the fact that, where the district court was presiding over related cases, it "could properly conclude that considerations of judicial economy favored retention of the cases." *Id.* at 975-76.  Teradata's other cases are inapposite and merely stand for the proposition that, where the other transfer factors ***clearly*** favor of transfer, the existence of co-pending litigation, ***by itself,*** should not preclude transfer.  *See, e.g., In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010) (the existence of a co-pending suit with a "limited relationship" to the case at bar did not warrant transfer "where the other convenience factors *clearly* favor [transfer]"); *In re Morgan Stanley*, 417 F. App'x 947, 949 (Fed. Cir. 2011) ("[t]he proper administration of justice *may* be to transfer to the *far more convenient* venue even when the trial court has some familiarity with a matter from prior litigation") (emphasis added); *GeoTag, Inc. v. Starbucks Corp.,* No. 2:10-cv-572, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013) (granting transfer

where Court had no material prior familiarity with patent-in-suit and there were no "common issues" between defendants). Here, **none** of the factors clearly favor of transfer, and in addition to the co-pending litigation, this Court is already very familiar with two of the patents-in-suit.

Judicial economy interests thus weigh heavily against transfer.

### B.      The Public Interest Factors Also Weigh Against Transfer.

None of the public interest factors favor transfer. Teradata cannot show that C.D. Cal. has any greater of an interest than this District, as the accused instrumentalities are web-based products and systems that are used nationwide, and Teradata does not dispute that the other factors are neutral.

### 1.      C.D. Cal. Does Not Have Greater Interest in this Case.

Teradata argues that C.D. Cal. has a "far greater interest" in this case, touting its "proud history," and the fact that it was founded "while still based our of a garage in Brentwood, California." Mot. at 15. But this Court has expressly rejected similar arguments, "as they amount to arguments that the Court should transfer the case because jurors in the transferee district will be more sympathetic to a particular party." *OnTargetJobs* (Ex. A), slip op. at 6; *Ingeniador, LLC v. Adobe Sys.*, No. 2:12-cv-805-JRG, 2014 U.S. Dist. LEXIS 3308, at *10-11 (E.D. Tex. Jan. 9, 2014). Teradata's presence and history in C.D. Cal. does not support transfer.

This factor weighs in favor of transfer only "if there are significant connections between a particular venue and the events that gave rise to a suit." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). This is certainly not the case here, as the accused instrumentalities are web-based products used by Teradata's customers nationwide. In fact, Teradata expressly admits that it has "customers within over 40 states, and *some of these customer are within this District.*" Mot. at 3 (emphasis added). Therefore, C.D. Cal. has "no more or less of a meaningful connection to this case than [this or any other District]." *TS Tech*, 551 F.3d at 1321. Moreover, Realtime has maintained an office in Tyler for over six years, where it conducts business related to the licensing and commercialization of the patents-in-suit.

14

McErlain Decl. at ¶ 4.  Teradata has offered speculation, but no evidence, that this is anything but a legitimate Texas presence.

### 2. The Other Public Interests Factors are Neutral.

Realtime does not dispute that the remaining public factors (time to trial, familiarity with the governing law, and conflicts of law) are neutral.

## V. TERADATA ALSO CANNOT SATISFY ITS BURDEN TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF CALIFORNIA

In a last-ditch effort to get this case transferred out of this District, Teradata argues that if this Court does not transfer the case to C.D. Cal, it should transfer it to N.D. Cal.  Here, the only factor on which Teradata focuses is "the relative ease of access to sources of proof" factor, where Teradata simply asserts that "[t]he same facts and argument apply equally to Teradata's alternative choice of venue, NDCAL."  Mot. at 8.  This is deficient on its face.

Teradata has failed to identify a single witness or piece of evidence located in N.D. Cal., let alone demonstrate that producing such evidence would be more burdensome absent transfer. Teradata has also failed to identify a single witness located in N.D. Cal.  And while Teradata's identified witnesses may be closer to N.D. Cal. than this District, any inconvenience to these witnesses is offset by the significant inconvenience to Realtime's witnesses in the event they will be required to travel to N.D Cal., which is nearly twice as far as this District.  Mirzaie Decl. at ¶ 5.  The judicial economy benefits discussed *supra* also weigh heavily against transfer.  Finally, N.D. Cal. has even less of an interest in this case than C.D. Cal. or this District.

Thus, for the same reasons this Court should deny Teradata's request to transfer this case to C.D. Cal., there are stronger reasons to deny Teradata's alternative request to transfer to N.D. Cal.

## VI. CONCLUSION

Teradata has failed to meet its burden of showing that the Central District of California or the Northern District of California is clearly more convenient than this District.  Teradata's motion to transfer should be denied in its entirety.

Dated: September 21, 2015

RUSS AUGUST & KABAT

/s/ *Reza Mirzaie*
Reza Mirzaie (CA SBN 246953)
Marc A. Fenster (CA SBN 181067)
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991
mfenster@raklaw.com
rmirzaie@raklaw.com

*Attorneys for Plaintiff Realtime Data LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail, facsimile, and/or first class mail on this date.

*/s/ Reza Mirzaie*
Reza Mirzaie
